UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                         :

MICHAEL CHRISTY,                  :

                      :

               Plaintiff,       :

                      :         19 Civ. 9666 (JPC)

       -v-               :

                      :      <u>OPINION AND ORDER</u>

                      :

WARDEN OF RIKER'S ISLAND, S. BASTIAN *et al.*,  :

                      :

             Defendants.     :

                      :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Michael Christy, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Christy alleges that while he was incarcerated at Bellevue Hospital and Riker's Island, Defendants violated his constitutional rights by failing to treat the pain and swelling in his right foot and by failing to provide him with a wheelchair following surgery to repair a fracture. Defendants have moved to dismiss the Amended Complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and for failure to state a claim pursuant to Rule 12(b)(6). For the reasons stated below, Defendants' motion to dismiss for failure to prosecute is denied and their motion to dismiss for failure to state a claim is granted. Moreover, Christy is granted leave to file a second amended complaint, as specified below.

# I.     Background

## A.  Factual Allegations

The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint and from the documents attached thereto and incorporated therein by reference.  Dkt. 22 ("Am. Compl."); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that at the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effect'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

On May 23, 2019, Christy, who was incarcerated in Bellevue Hospital's prison ward, had surgery to repair a Lisfranc fracture in his right foot.  Am. Compl. at 2.  At Bellevue, he was under the care of Defendant Dr. Nirmal Tejwani, an orthopedic surgeon, and Defendant Dr. Nicole Stevens, who assisted Dr. Tejwani and visited Christy "daily for ten days prior to the surgery to keep [him] abreast of what was going to happen."  *Id.* at 2-3.  Christy alleges that immediately after his surgery, he complained of pain in his right foot and the nurse injected him with morphine to lessen the pain.  *Id.* at 3.  Later that evening, he experienced "a stinging burning pain in the middle of [his] right foot and begged the nurse on duty to call someone to check on [him]."  *Id.*  When Dr. Stevens responded early next morning, Christy explained that "something was wrong and the post-op cast was causing severe, unbearable pain."  *Id.*  Christy contends that Dr. Stevens denied his request for pain medication, citing Christy's "alcoholism and drug history."  *Id.*  A few hours later, two doctors arrived to remove Christy's cast and to place a permanent cast on his right foot.  *Id.*  Christy explained to those doctors that he was experiencing pain in the area of his surgical

scars and stitches.  *Id.*  Christy alleges that, although the doctors agreed to wrap the cast more

loosely, they did not actually do so.  *Id.*

When Christy was transferred to Riker's Island the following day, he noticed that "the cast

was becoming tighter and had a dent in the back of it."  *Id.*  At some point, he learned that his foot

was swollen and infected.  *Id.*  On May 29, 2019, Christy was brought to the emergency room at

Bellevue after experiencing severe pain and swelling in his right foot and because his "big and

second toes were very black and blue."  *Id.*  The three emergency room doctors who attended to

Christy stated that they would take x-rays of his right foot and remove his cast.  *Id.*  About an hour

after the x-rays and after Christy received medication to alleviate the pain in his foot, he met with

Defendant Dr. Siddharth Mahure, who advised Christy that he had reviewed Christy's x-rays and

"there's nothing wrong."  *Id.*  Christy responded that Dr. Mahure "was mistaken and that there

[was] definitely a problem" because he could not "wiggle [his] toes nor could [he] move [his]

second toe that was worse looking than the big toe."  *Id.* at 4.  According to Christy, Dr. Mahure

declined to remove the cast and incorrectly noted that Christy could wiggle his toes and that the

swelling in his foot had been caused by Christy's failure to elevate his leg.  *Id.*

A week after his May 29, 2019 visit to Bellevue's emergency room, and as he continued

to experience "excruciating pain," Christy decided to remove the cast himself at Riker's.  *Id.*

Christy contends that he immediately "felt relieved of the pain" and observed severe bruising from

the cast.  *Id.*  Christy returned to Bellevue on July 9, 2019 for a follow-up appointment, during

which the attending doctor advised Christy that "it was smart to take the cast off and that there

were no new factures or any hardware problems."  *Id.*  During this follow-up visit, the doctor

advised Christy that he could expect a "walking date" of August 23, 2019.  *Id.*

On July 30, 2019, Christy was released from Riker's Island in a wheelchair.  *Id.*  On August 2, 2019, Christy again went to Bellevue due to severe swelling and pain in his right foot.  *Id.*  Christy alleges that he had his wheelchair stolen earlier that day and his right foot appeared to be badly infected.[1]  *Id.* at 4-5.  Christy returned to Bellevue's emergency room three days later, where doctors noted that his condition had worsened.  *Id.* at 5.  Christy was discharged in a wheelchair and he "stayed off the right foot and used crutches to make sure that [his] foot did not hit the ground."  *Id.*  On August 13, 2019, Christy once again arrived at Bellevue's emergency room for severe foot pain and swelling.  *Id.*  Christy admits to using heroin and alcohol during this period to help alleviate the pain in his right foot.  *Id.*

On September 9, 2019, Christy was rearrested for failing to report to parole and was again incarcerated at Riker's Island.  *Id.*  During his intake, Defendant Dr. Bernard Chukwuneke "insisted that [Christy] was not in a wheelchair" at the time of his arrest (as Christy maintains he was) and refused to permit Christy to have a wheelchair because "it wasn't allowed in the building."[2]  *Id.*  Christy alleges that Dr. Chukwuneke also refused to call Bellevue to confirm Christy's visits to the emergency room there and to contact the hospital at the North Infirmary Command ("NIC") to confirm that Christy had been released from NIC a few weeks earlier in a wheelchair.  *Id.*  Instead of a wheelchair, Christy was provided a cane.  *Id.* at 6.  According to Christy, due to Dr. Chukwuneke's order that he be placed in general population, many staff members told Christy that "they had no choice but to go along with his recommendation."  *Id.* at

---

[1] Christy's medical records from his August 2, 2019 visit to Bellevue do not mention his wheelchair being stolen but, rather, mention that "his crutches and boot" had been stolen from the shelter.  Am. Compl. at 17.

[2] Although both the Amended Complaint and the parties' motion to dismiss papers refer to a "Dr. Chukwaneke," the correct spelling of this Defendant's name appears to be "Dr. Chukwuneke."  *See* Dkts. 17, 25, 26.

9.  Christy claims that he "pleaded with Captains, Deputy Wardens and [Defendant] Warden S. Bastain [*sic*] to help [him] but to no avail or answer." *Id.* at 6.

After the intake, Christy was assigned to C-76, one of the jails on Riker's Island. *Id.* Within one week of his stay there, Christy felt "severe and sharp pains at the top and bottom of [his] foot" and visited a doctor for "a total of 20 times pleading for help." *Id.* Around this time, Christy interacted with Defendant Physician Assistant ("PA") Glenda Shearn. *Id.* Christy contends that PA Shearn "deliberately ignored" his concerns regarding his right foot, including "bypassing any input by [him]" and "avoid[ing] any conversation about [his] foot until she saw [his] foot swell in a very unusual way." *Id.* At that point, PA Shearn contacted Bellevue and had two videoconferences with doctors at the hospital concerning the condition of Christy's right foot. *Id.* In addition to PA Shearn, Christy also interacted with PA Alves, who ordered x-rays for Christy's right foot and tried to get Christy a wheelchair and transferred to NIC. *Id.* Christy, however, was never transferred to NIC because "Warden [Bastian] and anyone under [his] charge simply kept telling [Christy] there is no room in the NIC." *Id.* Christy alleges that he was forced to walk with and without a cane for approximately seven weeks in order to get his food and medication. *Id.* at 9.

After Christy was released from Riker's Island on November 1, 2019, he visited several doctors at Bellevue and Jamaica Hospital regarding his foot. *Id.* at 6-7. The doctors at Bellevue refused to provide Christy with another wheelchair. *Id.* at 6. During an appointment at Jamaica Hospital on December 13, 2019, Christy asked Dr. Sanjit Konda about "the hardware that was put in [his] foot when [his] foot was already in poor condition due to the severity of the Rheumatoid and Osteo- arthritis . . . and a previous severe sprain," and Dr. Konda responded that "he wasn't sure if he would have done it that way." *Id.* at 7. After this visit, Christy also was provided with

"a longer cam boot and crutches." *Id.* Christy alleges, according to Dr. Konda, his "foot bones have gone back into the position they were in after the initial break and have bundled together creating [a] huge bump on the top and left side of the foot." *Id.* Christy contends that he "now know[s] and believe[s] that the type of surgery done to [him] by Bellevue was not the right way to go due to [his] severe arthritic condition." *Id.* at 8. Christy further alleges that he "can't jog or run ever again." *Id.* at 7. According to Christy, had Dr. Chukwuneke contacted Bellevue during his intake on September 9, 2019, Dr. Chukwuneke would have found that "there was a very serious problem that need[ed] to be looked into." *Id.*

## B. Procedural History

Christy commenced this action on October 17, 2019, Dkt. 1, and filed an Amended Complaint on January 16, 2020, Dkt. 22. After Christy failed to appear for a telephonic conference with the Court on June 16, 2020 and July 7, 2020, the Honorable Andrew L. Carter, Jr, to whom this case was previously assigned, issued an order directing Christy to show cause why this action should not be dismissed without prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Dkt. 45. On August 20, 2020, Christy filed a letter in response to the order to show cause, Dkt. 49, and Judge Carter vacated his order on August 26, 2020, Dkt. 50. On September 29, 2020, this case was reassigned to the undersigned. On March 16, 2021, the Court held a conference on Defendants' anticipated motion to dismiss and, once again, Christy failed to appear for that court conference. Dkt. 87.

On May 3, 2021, Defendants moved to dismiss the Amended Complaint pursuant to Rules 12(b)(6) and 41(b) of the Federal Rules of Civil Procedure for failure to state a claim and for failure to prosecute, respectively. Dkt. 89-91 ("Motion"). Under the briefing schedule set by the Court, Christy was required to file his opposition to Defendants' motion to dismiss by June 2, 2021, Dkt.

86, but he failed to do so.  Instead, in a letter dated May 30, 2021, which the Court received on June 3, 2021, Christy requested an update on the status of the case.  Dkt. 94.  In a letter dated July 27, 2021, Christy informed the Court of a change of his address.[3]  Dkt. 96.  On October 5, 2021, the Court issued an order directing Christy to submit an opposition to Defendants' Motion by November 4, 2021.  Dkt. 97.  The Court also advised Christy that "[t]his Order constitutes a final extension of time for [Christy] to submit an opposition to Defendants' motion to dismiss."  *Id.*  On November 15, 2021, the Court received Christy's opposition to Defendants' Motion.  Dkt. 99 ("Opposition").  On December 6, 2021, Defendants filed their reply in further support of their Motion.  Dkt. 102.

## II.    Discussion

### A.  Motion to Dismiss for Failure to Prosecute

The Court begins by addressing Defendants' motion to dismiss the Amended Complaint for failure to prosecute.  Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  In determining whether a Rule 41(b) dismissal is appropriate, courts in the Second Circuit consider: (1) whether "the plaintiff's failure to prosecute caused a delay of significant duration"; (2) whether "plaintiff was given notice that further delay would result in dismissal"; (3) whether "defendant [is] likely to be prejudiced by further delay"; (4) whether the court has balanced "the need to alleviate court calendar congestion" against "plaintiff's right to an opportunity for a day in court"; and (5) whether there are worthwhile "lesser sanctions."  *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (quoting *United States ex rel. Drake v. Norden Sys.,*

---

[3] The Court previously was informed of Christy's change of address on November 18, 2019, Dkt. 6; February 26, 2020, Dkt. 27; and February 11, 2021, Dkt. 71.

*Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)).  While dismissal for failure to prosecute is subject to the sound discretion of the district court, "dismissal for lack of prosecution is a 'harsh remedy' that should 'be utilized only in extreme situations.'"  *Id.* at 575-76 (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)); *see also Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) ("[D]eference is due to the district court's decision to dismiss a pro se litigant's complaint only when the circumstances are sufficiently extreme.").

Considering these factors, the Court concludes that dismissal pursuant to Rule 41(b) is not warranted at this time.  To be sure, the Court warned Christy on several occasions that his failure to comply with its orders, including by failing to appear for court conferences and to adhere to his duty to notify the Court regarding any change of his address, may result in the dismissal of this action.  Dkts. 9, 45, 97.  And Christy's failure to diligently prosecute this action undoubtedly has caused significant delays.  Yet not all of the delays are attributable to Christy.  For example, certain delays arose from issues relating to service of the summons and the Amended Complaint on Defendants.  *See* Dkt. 50.  There also have been a handful of requests for extension of time sought by Defendants.  *See* Dkt. 13 (requesting a one-month extension for PA Shearn to respond to the Complaint); Dkt. 23 (requesting an extension of deadlines for Dr. Chukwuneke and PA Shearn to respond to the Amended Complaint); Dkt. 66 (requesting a four-week extension for Drs. Tejwani and Mahure to respond to the Amended Complaint and to adjourn the pre-motion conference); Dkt. 78 (requesting an approximately one-month extension for Dr. Stevens to respond to the Amended Complaint).  Therefore, to the extent Defendants were prejudiced by the delays in this action, such prejudice cannot be attributed solely to Christy.

Moreover, it appears that Christy's lack of a permanent residence, including being homeless for periods of time, contributed to his failure to pursue this action in a diligent manner.

*See* Dkts. 60, 96.  While this does not excuse Christy's failure to pursue this action, it does weigh against dismissal at this time.  *See Mayanduenas v. Bigelow*, 849 F. App'x 308, 311 (2d Cir. Mar. 16, 2021) (summary order) (vacating the district court's dismissal pursuant to Rule 41(b) because, among other factors, the district court failed to consider the plaintiff's delay in providing an updated address in light of his "homelessness, mental health struggles, and limited language proficiency").  Christy also demonstrated his intent to pursue his claims after receiving notice of the possibility of dismissal if he failed to do so.  On October 5, 2021, the Court ordered Christy to submit an opposition to Defendants' motion to dismiss by November 4, 2021 and warned that "[f]ailure to oppose the motion (or otherwise indicate an intention to proceed with the lawsuit) may result in Defendants' motion being granted as unopposed or in dismissal of the case for abandonment or failure to prosecute."  Dkt. 97.  Christy then filed the Opposition on November 15, 2021.  Although Christy submitted the Opposition after the deadline set by the Court, his filing of the Opposition sufficiently indicates his intent to proceed with the lawsuit.

Accordingly, the Court finds that dismissing the Amended Complaint for failure to prosecute would be a "harsh remedy" at this time, and, thus, denies Defendants' motion to dismiss under Rule 41(b).  As discussed below, however, the Court does grant Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), and grants Christy leave to file a second amended complaint by January 28, 2022.  In the event Christy wishes to file a second amended complaint, he is on notice that his failure to diligently pursue this action and comply with Court orders, such as by adhering to deadlines (including the January 28, 2022 deadline to file a second amended complaint) and updating the Court with any new address, may result in the Court dismissing this action for failure to prosecute without further notice.

## B. Motion to Dismiss for Failure to State a Claim

### 1. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

The Court must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (internal quotation marks omitted). But a *pro se* complaint still "must state a plausible claim for relief." *Id.* "Even in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

### 2. Section 1983 and Deliberate Indifference Claims

Christy argues that Defendants violated his Eighth Amendment right against cruel and unusual punishment when they acted with deliberate indifference to his serious medical needs. Am. Compl. at 1. The Court construes Christy's claims against Defendants as arising under 42 U.S.C. § 1983. To state a claim under section 1983, Christy must allege both that: (1) a right

secured by the Constitution or laws of the United States was violated and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Moreover, a defendant's personal involvement in the constitutional deprivation is a prerequisite for individual liability in a section 1983 action. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The "deliberate indifference" standard consists of both objective and subjective components. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Under the objective component, the inmate must allege that he was "actually deprived of adequate medical care" and the alleged deprivation of medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279. Although there is "no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), courts in the Second Circuit consider factors such as (1) whether a reasonable doctor or patient would find the injury "important and worthy of treatment," (2) whether the medical condition significantly affects an individual's daily activities, and (3) whether the illness or injury "inflicts chronic and substantial pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Jimenez v. Sommer*, No. 14 Civ. 5166 (NSR), 2017 WL 3268859, at *5 (S.D.N.Y. July 28, 2017) ("Harm is considered 'sufficiently serious' if it could 'produce death, degeneration, or extreme

pain,' or 'the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" (citations omitted)).

Under the subjective component, "the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). This means that the prison official must act in a manner by which he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (explaining that to satisfy the subjective prong of the deliberate indifference standard, "the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness'"). "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703; *Salahuddin*, 467 F.3d at 279 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."). Furthermore, a "disagreement" over the proper treatment does not establish a constitutional violation as long as "the treatment given is adequate." *Chance*, 143 F.3d at 703.

### a. The Bellevue Defendants

Christy fails to allege claims for deliberate indifference against Drs. Tejwani, Stevens, and Mahure (the "Bellevue Defendants"). The essence of Christy's deliberate indifference claims against the Bellevue Defendants is that he experienced severe pain and swelling in his right foot after his May 23, 2019 surgery and, in the days following that surgery, these Defendants failed to provide him with adequate care by refusing to provide pain medication and by failing to remove

his cast.  As an initial matter, Christy fails to allege a sufficiently serious medical issue in the days after his surgery, as required under the objective prong.  *See, e.g.*, *Veloz v. New York*, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (finding the plaintiff's fracture, bone cyst, and degenerative arthritis in his feet were not "sufficiently serious" medical conditions under the Eighth Amendment); *Alston v. Howard*, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (finding that ankle pain after surgery was not sufficiently serious); *Hernandez v. Goord*, No. 02 Civ. 1704 (DAB), 2006 WL 2109432, at *6 (S.D.N.Y. July 28, 2006) (finding that the severity of the plaintiff's foot injury did not warrant Eighth Amendment protection because even though the plaintiff had trouble walking and the injury was painful, the plaintiff did not argue that "his injury rose to the level of being life-threatening"); *Cole v. Scully*, No. 93 Civ. 2066 (LAP), 1995 WL 231250, at *6 (S.D.N.Y. Apr. 18, 1995) (finding that the failure to prescribe orthopedic shoes and dressing feet too tightly after bunion surgery does not constitute a "serious medical need" under the Eighth Amendment).

Moreover, after crediting Christy's allegations in the Amended Complaint and reviewing his medical records attached thereto, the Court has no basis to conclude that the medical care that Christy received from the Bellevue Defendants was inadequate.  Christy was seen by Dr. Stevens early in the morning after complaining of pain the evening before and he was seen by Dr. Mahure about an hour after he was seen by the emergency room doctors and had x-rays taken of his foot. Therefore, there was no significant delay in the time that Christy was treated by either of these Defendants.  Moreover, as discussed below, Christy's contention that "he should have received other forms of treatment" from the Bellevue Defendants (*i.e.*, receive pain medication and have his cast removed) "amounts to a difference of opinion as to appropriate medical treatment, which is not actionable under the Eighth Amendment." *Jimenez*, 2017 WL 3268859, at *6.  Accordingly,

the Amended Complaint fails to meet the objective prong of Christy's deliberate indifference claims against the Bellevue Defendants.

The Amended Complaint also fails to satisfy the subjective prong because Christy does not allege facts sufficient to support the conclusion that the Bellevue Defendants acted in "conscious disregard of a substantial risk of serious harm." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Turning first to Dr. Tejwani, Christy's only allegations against him are that he was the "lead orthopedic surgeon" at Bellevue who performed surgery on Christy's foot and that Christy woke up from surgery screaming of pain. Am. Compl. at 2-3. While the allegation that "the type of surgery done to [Christy] by Bellevue was not the right way to go due to [his] severe arthritic condition" arguably may support a claim of medical malpractice, *id.* at 8, such allegation of purported negligence by Dr. Tejwani "is not enough to plausibly allege deliberate indifference." *Jimenez*, 2017 WL 3268859, at *8; *see also Williams v. Carbello*, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Harris v. Westchester Cnty. Med. Ctr.*, No. 08 Civ. 1128 (RJH), 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) (finding that the plaintiff's allegations regarding the quality of the defendant doctor's "surgery, or of adverse consequences from the surgery . . . do not amount to plausible allegations of deliberate indifference").

Similarly, with respect to Dr. Stevens, Christy alleges that she assisted Dr. Tejwani and visited him "daily for ten days prior to the surgery to keep [him] abreast of what was going to happen." Am. Compl. at 3. On the evening after the surgery, Christy "begged the nurse on duty to call someone to check on [him]" and, by Christy's own admission, Dr. Stevens "responded in the early morning hours of the next day to see what the problem was." *Id.* Although Christy

14

contends that Dr. Stevens denied him pain medication due to his "alcoholism and drug history," *id.*, Christy does not allege that Dr. Stevens' decision not to prescribe pain medication in light of Christy's medical history was unreasonable or that she acted with a conscious disregard for the substantial risk of harm to his health.  To the contrary, Christy's objection to Dr. Stevens' medical decision constitutes a mere disagreement between the parties over the proper treatment plan to manage Christy's pain following his surgery, which does not give rise to an Eighth Amendment violation.  *See Veloz*, 339 F. Supp. at 525 ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment."); *Harris*, 2011 WL 2637429, at *3 ("The failure to provide stronger pain medication does not constitute deliberate indifference."); *Morrison v. Mamis*, No. 08 Civ. 4302 (PAC) (AJP), 2008 WL 5451639, at *10 (S.D.N.Y. Dec. 18, 2008) (finding that a doctor's decision regarding the type and dosage of pain medication was reasonable and the plaintiff's disagreement with the treatment did not give rise to an Eighth Amendment claim), *report and recommendation adopted*, 2009 WL 2168845 (S.D.N.Y. July 20, 2009).

The deliberate indifference claim against Dr. Mahure fails for similar reasons.  Christy alleges that he was treated by Dr. Mahure during his May 29, 2019 visit to Bellevue's emergency room for severe pain and swelling in his right foot.  The crux of Christy's Eighth Amendment claim against Dr. Mahure is that he refused to remove Christy's cast despite Christy previously been informed by the emergency room doctors that "the cast was going to be cut off."  Am. Compl. at 3-4.  Allegations that Dr. Mahure made a different medical decision than the emergency room doctors regarding whether to remove Christy's cast does not, on its own, rise to the level of deliberate indifference.  *See McKenna v. Wright*, No. 01 Civ. 6571 (WK), 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) (noting that because "[n]ot every physician will treat every ailment in

exactly the same manner," the fact that "the defendant physicians may have made a different medical decision with respect to Plaintiff's treatment than that purportedly recommended by [another doctor] does not indicate that they acted for culpable reasons" (internal quotation marks omitted)); *Hodge v. Coughlin*, No. 92 Civ. 622 (LAP), 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994) ("[A] dispute between two doctors as to the proper course of medical treatment will not give rise to an Eighth Amendment violation.").  Here, Christy alleges that Dr. Mahure reviewed his x-rays and concluded that "there's nothing wrong."  Am. Compl. at 3.  Dr. Mahure also observed that the swelling and pain in Christy's right foot "is due to dependent leg positioning." *Id.* at 13.  Based on his evaluation of Christy's condition, Dr. Mahure concluded that the "cast does not require change" and recommended that Christy elevate his foot to lessen the swelling and the pain. *Id.*

Christy's allegations that he thought Dr. Mahure was "mistaken" and that Dr. Mahure "wrongfully" noted that Christy could wiggle his toes and blamed the swelling on Christy's failure to elevate his leg also are not sufficient to state a claim for deliberate indifference under the Eighth Amendment.  As previously discussed, it is well established that "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703.  Moreover, the Eighth Amendment does not provide a "right to the medical treatment of one's choice." *McCullough v. Scully*, 784 F. Supp. 115, 117 (S.D.N.Y. 1992) (internal quotation marks omitted). Accordingly, Christy's allegations that Dr. Mahure recommended a difference course of action than the one advised by the emergency room doctors at Bellevue and that Christy disagreed with Dr. Mahure's treatment plan, without more, do not state a claim for deliberate indifference.

For the foregoing reasons, Christy's Eighth Amendment claims against the Bellevue Defendants are dismissed.

### b.  The Riker's Defendants

Christy also does not adequately allege claims for deliberate indifference against Warden

Bastian, PA Shearn, and Dr. Chukwuneke (the "Riker's Defendants").  Christy contends that, in

addition to failing to treat the pain and swelling in his right foot, the Riker's Defendants failed to

provide him with a wheelchair and to transfer him to NIC and, instead, forced him to walk "with

and without a cane" for the approximately seven weeks that he was incarcerated at Riker's Island.

Am. Compl. at 9.  According to Christy, he experienced "severe and sharp pains at the top and

bottom of [his] foot" within one week of his stay and visited a doctor for a total of 20 times.  *Id.* at

6.  Christy also alleges that the screws that were inserted in his right foot during the surgery to

repair his Lisfranc fracture "were migrating backwards out of [his] foot" and one of the toes in his

right foot was broken.  *Id.*  The Amended Complaint does not specify whether Christy's use of a

cane caused or further exacerbate these conditions or whether providing Christy with access to a

wheelchair was medically necessary as opposed to constituting a difference in opinion over

medical treatment.

Nevertheless, construing Christy's allegations liberally, the Court finds that the Amended

Complaint plausibly alleges that Christy suffered a serious injury due to the Riker's Defendants'

failure to provide him with a wheelchair and to transfer him to NIC.  *See, e.g.*, *Hallett v. N.Y. State

Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 201 (S.D.N.Y. 2000) (finding on motion to dismiss

that the plaintiff had sufficiently alleged a serious injury because he was deprived of a proper

wheelchair for five months and, as a result, he suffered "severe and unnecessary pain," "severe

back pain," and a cut head); *Brown v. DeFrank*, No. 06 Civ. 2235 (AJP) , 2006 WL 3313821, at

*23 (S.D.N.Y. Nov. 15, 2006) (denying motion to dismiss where the defendants "did not allow

[the plaintiff] to have a cane, which would have greatly reduced [his] hip pain when walking, for

approximately one week, and allowed [his] cane permit to lapse for approximately a month and a half, making [the plaintiff] subject to discipline if he were caught with the cane but without a permit"); *but see Wandell v. Koenigsmann*, No. 99 Civ. 8652 (WHP), 2000 WL 1036030, at *4 (S.D.N.Y. July 27, 2000) ("Whether an injured prisoner should be provided crutches is a medical judgment as to the appropriate course of treatment, and disagreement with that decision is not actionable under the Eighth Amendment.").

Christy, however, fails to allege facts sufficient to satisfy the subjective prong of the deliberate indifference standard.  With respect to Warden Bastian, the only purported wrongdoing that Christy alleges is that Warden Bastian did not respond to his request for help and did not accommodate his request to be transferred to NIC.  Am. Compl. at 6, 9.  Christy does not allege that Warden Bastian personally knew of and disregarded an excessive risk to his health, which is a prerequisite for individual liability under section 1983.  *See Sutton v. Rodriguez*, No. 18 Civ. 1042 (PMH), 2020 WL 5504312, at *5 (S.D.N.Y. Sept. 8, 2020) ("[A] prerequisite for any individual liability claim under § 1983 is establishing that a defendant was 'personal[ly] involve[d] in the alleged constitutional deprivation.'" (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).  In fact, there is no allegation anywhere in the Amended Complaint that Warden Bastian even knew about Christy's medical issues.  The absence of any allegations that would plausibly suggest Warden Bastian's personal involvement in depriving Christy of his constitutional right is fatal to Christy's Eighth Amendment claim against Warden Bastian.

Likewise, Christy's allegations against PA Shearn also do not support the conclusion that she disregarded a substantial risk of serious harm to his health.  The Amended Complaint alleges that PA Shearn "deliberately ignored" Christy's concerns regarding his foot until she saw his foot "swell in a very unusual way."  Am. Compl. at 6.  But such allegations do not suggest that PA

Shearn knowingly disregarded an excessive risk to Christy's safety.  *See Nisvis v. N.Y. State Dep't of Corr. Servs.*, No. 11 Civ. 2004 (PGG) (GWG), 2013 WL 4757839, at *5 (S.D.N.Y. Sept. 4, 2013) ("That a nurse was dismissive of his complaints of pain is insufficient to show deliberate indifference.").   Indeed, Christy's own allegations indicate that once PA Shearn saw Christy's foot swell, she contacted Bellevue and had videoconferences with the doctors there regarding the condition of his foot.  As such, any potential delay by PA Shearn in treating Christy's foot is not sufficient to sustain a claim of deliberate indifference under the Eighth Amendment.  *See id.* (holding that the plaintiff failed to meet the subjective prong because allegations that the defendants caused an "unnecessary and unreasonable delay in providing medical treatment" and "depriv[ed] and disregard[ed]" the plaintiff's pain and suffering in his right arm after having a surgery constituted allegations of negligence or medical malpractice).

Christy's allegations as to Dr. Chukwuneke are a closer call.  The Amended Complaint alleges that Dr. Chukwuneke conducted Christy's intake at Riker's when he was re-arrested on September 9, 2019.  Am. Compl. at 7.  Although Christy contends that he told Dr. Chukwuneke about his post-surgery complications and Dr. Chukwuneke refused to contact Bellevue and NIC regarding Christy's prior visits, *id.* at 5, the Amended Complaint does not allege what, if any, knowledge Dr. Chukwuneke had regarding Christy's medical history and his then existing medical conditions.  Such information is necessary to determine whether Dr. Chukwuneke acted with the requisite state of mind when he ordered that Christy be placed in general population and be provided with a cane instead of a wheelchair (*i.e.*, whether Dr. Chukwuneke knew of and consciously disregarded the serious risk of causing Christy severe pain and exacerbating any complications stemming from his surgery).  *See, e.g., Carrasquillo v. City of N.Y.*, 324 F. Supp. 2d 428, 434, 439 (S.D.N.Y. 2004) (concluding that the subjective prong of the deliberate

indifference standard was met where the plaintiff alleged that the defendants denied the plaintiff a crutch or cane, despite "knowing" of the plaintiff's claims that the injuries have caused him "extreme pain and suffering," the deterioration of the plaintiff's body, and that "plaintiff could hardly support himself").

At this time, the Court cannot exclude the possibility that Christy may be able to plead facts to support a valid claim for deliberate indifference against Dr. Chukwuneke.  Accordingly, Christy's deliberate indifference claims against the Riker's Defendants are dismissed, but Christy may amend his Eighth Amendment deliberate indifference claim against Dr. Chukwuneke *only*. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (internal quotation marks and alteration omitted)).

### 3.  Medical Malpractice Claims

Defendants also argue that to the extent Christy's claims against Defendants "may be construed as pendent state law claims alleging medical malpractice, such claims must be dismissed because [Christy] failed to comply with the Notice of Claim requirements, which are conditions precedent to suit against a public corporation or its employees pursuant to N.Y. Gen. Mun. L. § 50-e."  Motion at 20-21.  The Amended Complaint makes no reference to state law medical malpractice claims.  However, Defendants are correct that any state law medical malpractice claims would require Christy to have filed a timely notice of claim.

New York General Municipal Law section 50-d(1) requires that "every municipal corporation shall be liable for, and shall assume the liability . . . of any resident physician [or] physician . . . rendering medical . . . services of any kind to a person without receiving

compensation from such person in a public institution maintained in whole or in part by the municipal corporation . . . for damages for personal injuries alleged to have been sustained by such person by reason of the malpractice of such resident physician [or] physician . . . while engaged in the rendition of such services."  It further mandates that "[n]o action shall be maintained under this section against such municipality, resident physician [or] physician . . . unless a notice of claim shall have been made and served in compliance with section [50-e] of this chapter [and] shall be commenced pursuant to the provisions of section [50-i] of this chapter."  N.Y. Gen. Mun. Law § 50-d(2).

Under New York General Municipal Law sections 50-i(1)(c) and 50-e(1), no action shall be maintained against any resident physician or physician unless a notice of claim has been served within 90 days after the claim arises.  Although "[s]ervice of the notice of claim upon an . . . employee of a public corporation shall not be a condition precedent to the commencement of an action or special proceeding against such person," where, as here, an action is commenced against an employee of a public corporation but not against the public corporation, service of the notice of claim upon the public corporation is required "if the corporation has a statutory obligation to indemnify such person."  *Id.* § 50-e(1)(b).  "New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  New York's "notice of claim requirements apply to pendent state law claims" brought in federal court.  *Boomer v. Lanigan*, No. 00 Civ. 5540 (DLC), 2002 WL 31413804, at *9 (S.D.N.Y. Oct. 25, 2002).

Should Christy choose to include state law medical malpractice claims in his second amended complaint against any of the medical practitioner Defendants (*i.e.*, any Defendant aside from Warden Bastian), he must plead timely fulfillment of this notice of claim requirement as a threshold matter for the Court to consider his claims.  Christy also must allege facts sufficient to show with respect to each Defendant "(1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage."  *Torres v. City of N.Y.*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001) (citing *Lyons v. McCauley*, 675 N.Y.S. 375, 376 (App. Div. 2d Dep't 1998)).

### III.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.  Defendants' motion to dismiss for failure to prosecute pursuant to Rule 41(b) is denied.  Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is granted.  The Amended Complaint, however, is dismissed without prejudice to Christy filing a second amended complaint on his Eighth Amendment deliberate indifference claim against Dr. Chukwuneke *only* and any medical malpractice claims against all Defendants, except Warden Bastian.

The Clerk of Court is respectfully directed to terminate the motion pending on Docket 89 and to mail a copy of this Opinion and Order to Christy and note service on the docket.  If Christy chooses to file a second amended complaint, he must do so by January 28, 2022.  Because any second amended complaint will completely replace, not supplement, the Amended Complaint, any facts or claims that Christy wishes to maintain must be included in the second amended complaint.

If Christy fails to file a second amended complaint by January 28, 2022 and he does not show good cause to excuse such failure, the Court will direct the Clerk of Court to close this case.

      SO ORDERED.

Dated: December 17, 2021
      New York, New York

                                 JOHN P. CRONAN
                           United States District Judge